1
2
3
4
5
6

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

7

THE ELEANORA J. DIETLEIN TRUST, et al.,

Case No. 3:11-CV-0719-LRH (VPC)

8

Plaintiffs,

**ORDER**

9

v.

10

AMERICAN HOME MORTGAGE
INVESTMENT CORP. ,

11

12

Defendant.

13
14

**<u>INTRODUCTION</u>**

15           This case concerns the family trust of Eleanora Dietlein (the "trust") and disputes among

16   her three surviving children, Eric Dietlein ("Eric"), William Dietlein ("Bill"), and Nora Dietlein

17   Christensen ("Nora").  On October 5, 2011, a lawsuit involving the trust was removed to this

18   court (#1).  The plaintiffs are identified as the trust, Derek Neumann, and Gina Neumann, and

19   they sued American Home Servicing, Inc. ("AHMSI") for wrongful foreclosure and various state

20   law claims related to the alleged wrongful foreclosure of real property belonging to the trust,

21   which is located 5600 Grass Valley Road, Washoe County, Nevada (the "Grass Valley

22   property") (#1).  The trust owned the Grass Valley property, and the Neumanns were lessors.  *Id.*

23   Karlon Kidder, Esq. ("Mr. Kidder") represented all of the plaintiffs.

24            Eric was not a named plaintiff, nor was he a trustee of the trust at the time the complaint

25   was filed; nevertheless, he appeared before this court as the "trust representative" in court

26   hearings and at a settlement conference.[1]  At the January 10, 2013 settlement conference, the

27

28           [1]It was later learned that Mark Chase was the actual trustee of the trust at the time the
case was filed and when the case was purportedly settled (#35).

1  parties settled the case, and they agreed to an April 2013 deadline to submit their stipulation to

2  dismiss with prejudice (#29).   It was not until January 2014 – one year after the settlement

3  conference – that Bill's attorney contacted the court to inquire about the status of the case.   The

4  court set a status conference (#31), Bill and Nora, as co-trustees of the trust, filed notices of

5  appearance (#s 33 & 34), and they jointly filed an objection to the proposed settlement and

6  stipulated dismissal (#35).   Plaintiffs and AHMSI also filed status reports (#s 32 & 36).

7       At the January 27, 2014 hearing, the court learned that after the settlement conference,

8  AHMSI requested documentation required to complete the settlement, but despite repeated

9  efforts, plaintiffs did not provide the documents to AHMSI until December 20, 2013 (#32).

10  AHMSI then learned that litigation involving the trust had been pending for years, and that the

11  state court had recently issued an order appointing co-trustees.   *Id.*   AHMSI also learned that Eric

12  – who had attended the settlement conference on behalf of the trust – was not the trustee of the

13  trust either at the time the complaint was filed or at the time of the settlement conference.   *Id.*

14       Nora and Bill's joint status report revealed more details.   From September 2011 through

15  the January 2013 settlement conference, Mark Chase ("Mr. Chase") served as trustee for the trust

16  and was represented by Scott Brooke, Esq. ("Mr. Brooke") (#35).   According to Bill and Nora,

17  neither they nor Messrs. Chase and Brooke knew about this lawsuit.   *Id.*   In November 2012, Bill

18  and Nora filed a first amended joint petition in Douglas County state court against Eric and

19  alleged claims of breach of fiduciary, conversion, fraud, negligence, alter ego, unjust enrichment,

20  and statutory claims.   *Id.*   During the pendency of that proceeding, Bill and Nora alleged that

21  Eric failed to disclose either the Grass Valley property or this action.   *Id.*   Mr. Chase resigned as

22  trustee in October 2013, and in December 2013, the state court appointed Eric, Bill, and Nora as

23  co-trustees of each trust of which they are beneficiaries.   *Id.*   The state court further ordered that

24  unanimous consent is required by all co-trustees for the trust to take any action.   *Id.*; Exhibit C.

25       Having heard from AHMSI, Bill, Nora, as well as Mr. Kidder, Eric, and Mr. Neumann,

26  the court found that there was no settlement of this case in January 2013, and it stayed any

27  motion to enforce the settlement agreement pending further order of the court (#40).   The court

28  also ordered Mr. Kidder to produce his complete client file to counsel for Bill and Nora,

"including all notes, correspondence, emails, pleadings, [and] any paper whatsoever that deals with [Mr. Kidder's] representation of the trust." *Id.*

Shortly after this hearing, Bill and Nora requested and received permission to file an expedited motion to compel, for sanctions and order to show cause (#45). Mr. Kidder filed a motion to withdraw as counsel for plaintiffs (#43), a motion for recusal of magistrate judge (#44), and the Neumanns filed a motion to enforce settlement agreement (#42).[2]

On March 25, 2014, this court issued an order to show cause as follows:

> 1.     A hearing is set for May 22 and 23, 2014 to show cause:
>
>        (a)   why Karlon J. Kidder, Esq. should not be sanctioned pursuant to (1) the motion to compel and for sanctions (#45), (2) this court's inherent power, (3) 28 U.S.C. § 1927, (4) Local Rule iA 4-1, (5) Local Rule iA 10-7, and (6) Rule 5.5 of the Nevada Rules of Professional Conduct; and
>
>        (b)   why Eric Dietlein should not be sanctioned pursuant to this court's inherent power, or referred to the State Bar of Nevada pursuant to NRS 7.285(1) & (3).
>
> 2.     Eric Dietlein and Karlon Kidder shall appear in person at the show cause hearing to present evidence and to testify as to their authority to file this action on behalf of the trust, their written and oral representations to this court, and all matters raised and/or summarized in Section I of this order.
>
> 3.     Derek Neumann and Gina Neumann shall appear in person at the show cause hearing.
>
> 4.     William Dietlein and Nora Dietlein Christensen shall appear in person with their counsel at the show cause hearing.
>
> 5.     If Mr. Kidder or Eric Dietlein wishes to retain counsel to represent them in this proceeding, such counsel shall file a notice of appearance no later than April 1, 2014.
>
> 6.     Mr. Kidder, Eric Dietlein, William Dietlein, and Nora Dietlein Christensen shal file pre-hearing briefs, either *in pro se* or through counsel, no later than 5:00 p.m. Pacific Time on

---

[2]The court denied the motion for recusal (#63), ordered the motion to enforce settlement agreement stricken (#62), and granted Mr. Kidder's motion to withdraw as counsel for plaintiffs on February 24, 2014. *Id.*

Friday, May 2, 2014, which will include the following:

A.   List of witnesses to be called;

B.   List of exhibits to be introduced;

C.   Issues of law and issues of fact to be considered at the show cause hearing;

D.   Stipulation as to witnesses and exhibits; and

E.   Any additional information that will assist the court [in] its preparation for the show cause hearing.

The court held an evidentiary hearing on May 22 and May 23, 2014 (#88 & 89). At the conclusion of the hearing, the court ordered the parties to submit post-hearing briefs and/or proposed findings of fact and conclusions of law (#89). Bill and Nora filed a post-hearing brief and proposed findings of fact (#s 91 & 92), and Mr. Kidder and Eric filed post-hearing briefs (#s 93 & 94).[3]

This order follows.

## FINDINGS OF FACT

The following facts are established by clear and convincing evidence:

I.   **Introduction**

1.  The Court held a Show Cause Hearing on May 22-23, 2014. In attendance were Mr. Kidder, Eric Dietlein and his counsel, Michael Sullivan, Esq., plaintiffs Derek and Gina Neumann and their counsel, Kevin Van Ry, Esq., co-trustee Bill Dietlein and his counsel, Gregory F. Wilson, Esq. and Jeffrey S. Einsohn, Esq., and co-trustee Nora Dietlein Christensen and her counsel, Robert C. Herman, Esq. (#s 88 & 89).

2.  The Court conducted examinations of Mr. Kidder, Eric, and Mr. Neumann. Thereafter, the parties conducted further examinations of those witnesses and of the following additional witnesses:

---

[3]Mr. Kidder represented himself at the show cause hearing, Michael Sullivan, Esq. represented Eric, and Kevin Van Ry represented the Neumanns (#s 71 & 76).

- 4 -

a.  Bill Dietlein, currently a co-trustee;

b.  Nora Dietlein Christensen, currently a co-trustee;

c.  Scott Brooke, Esq., former attorney for Eric Dietlein and subsequently attorney for independent trustee Mark Chase; and

d.  Mark Wray, Esq., Eric Dietlein's current state court counsel.

3.   Karlon Kidder, Esq. was counsel of record for plaintiffs in this case.   Hearing Transcript ("HT") 47:6-11.

4.  Mr. Kidder has been a member of the Nevada State Bar since 2010. He is currently a solo practitioner. He is not licensed to practice in any other jurisdiction. He has had multiple bar complaints filed against him. HT 4:15-5:12.

5.  Eric, Bill, and Nora are siblings and beneficiaries of the trust. Eric was a trustee for many years and was made the sole manager of numerous limited liability companies owned by the trust.  HT 72:23-73:6; 94:2-9; 158-2-160:7; 163:10-13; 332:10-15; 349:1-15.

6.  Administration of the trust is being overseen by Judge Michael Gibbons in the Ninth Judicial District Court for the State of Nevada.  In February 2011, Judge Gibbons issued a temporary restraining order and preliminary injunction enjoining Eric from taking unilateral or unapproved actions. Exhibit 51.

7.  In April 2011, Eric resigned as trustee and Judge Gibbons appointed Mark Chase as the independent trustee. Exhibit 52.

**II.    Trust Acquisition of the Property**

8.  Prior to working for Mr. Kidder, Eric started a lending business. The first loan was made with money obtained from Bill. Thereafter, Eric funded his loan business with trust money. HT 129:8-12.

9.  For this first loan of $50,000, Eric approached Bill to acquire the necessary capital. At that point, Bill had no reason to distrust his brother. Eric told Bill that Bill's participation would be short term. Bill was paid back his $50,000 within a few months. HT 215:9-13; 220:19-25; 221:1-14.

- 5 -

1      10. Bill never visited the property. He did not know where the property was located. He

2  thought the property was somewhere in California. The property was never identified to him as

3  the "Palomino Property." Bill never met the borrowers, Max and Gail Anne Lopez-Gonzalez (the

4  "Lopez-Gonzalezes"). HT 221:15-222:4.

5      11.   Eric paid himself $2,000 for making this first loan. This loan to the Lopez-

6  Gonzalezes was secured by a second deed of trust on this Grass Valley property, which is the

7  subject of this lawsuit. That same year, 2006, Eric paid himself an additional $56,194 for loaning

8  out trust money. HT 130:19-131:1

9      12.  Eric refinanced his loan to the Lopez-Gonzalezes, and in the spring of 2008, Eric

10  foreclosed on the property on behalf of the trust. HT 116:22-117:13. The property was taken

11  subject to a preexisting mortgage.  Bill did not know the trust owned the property or that it was

12  being rented out to Derek and Gina Neumann (the "Neumanns"). Bill never met the Neumanns.

13  HT 222:5-222:20.

14      13.  Bill only became aware the trust owned the property in late 2013 or early 2014. HT

15  215:6-8. Prior to 2014, Bill had never seen any pleading filed in this action.  HT 226:9-12.

16      14.   Bill was unaware that the references made to an "AHMSI lawsuit" in a status

17  conference before Judge Gibbons had anything to do with the $50,000 loan to the Lopez-

18  Gonzalezes or the Grass Valley property. HT 216:20-218:7.

19  **III.**    **Eric Dietlein's Relationship with Derek Neumann**

20      15. The Neumanns are tenants on the Grass Valley property.  Mr. Neumann was unaware

21  that Eric had resigned as trustee in April 2011.  Mr. Neumann continued to believe Eric was a

22  trustee throughout the pendency of this lawsuit. HT 102:17-103:2.

23      16.  At all relevant times, Eric acted as the landlord for the Grass Valley property.  Mr.

24  Neumann never communicated with the actual trustee, Mr. Chase, or the trustee's attorney, Mr.

25  Brooke. HT 102:3-6.

26      17.  In addition to their landlord-tenant relationship, Eric also employed Mr. Neumann to

27  perform services on other properties owned by the trust and by Eric personally.  Mr. Neumann

28  was paid for work on Eric's personal properties with trust money. HT 132:2-134:25.

18.  Exhibit 35 is the NRCP 16.1 disclosure for a case in the First Judicial District Court (26 Stokes Drive, LLC v. NAFCO Industries, Inc. et al.).  Eric was manager of the plaintiff and Bill was president of the first named defendant. Mark Wray, Esq. prepared Exhibit 35. Mr. Neumann was identified in Exhibit 35 as a witness, but his address was stated incorrectly. Mr. Wray's source for the incorrect address was Eric.   HT 331:3-332:15. Eric knew that Mr. Neumann's correct address was 5600 Grass Valley Road. The plain inference from these facts is that Eric did not want Bill to be able to locate and depose Mr. Neumann. This is because Bill would then discover that (1) the trust owned the Grass Valley property Mr. Neumann was living on, (2) Mr. Neumann was not paying any rent to the trust, and (3) Eric was paying Mr. Neumann with trust money to perform work on Eric's personal investment properties.

19.  The Neumanns were granted an option to purchase the Grass Valley property in late 2009.  Exhibit 4. Under the option agreement the Neumanns could obtain ownership of an eleven-acre parcel including the existing house, out of a total of forty acres. The Neumanns would also be entitled to a second parcel of at least 2.5 acres. To exercise the option, the Neumanns would have to pay off the current mortgage balance.  At the time the option agreement was made, the mortgage balance was about $278,000.  Alternatively, the parties to the option agreement contemplated transferring all forty acres of the property to the Neumanns with the trust retaining the right to five out of seven possible parcels. Exhibit 4; 137:12-138:15.

20.  Mr. Neumann testified that even after this lawsuit was over, he intended to keep his deal with Eric and give Eric, whom he believed was still the trustee, five out of seven possible parcels.  HT 386:11-13.  Mr. Neumann's attempt to recant this testimony was not credible. Mr. Neumann's testimony explains Eric's motivation to proceed with this lawsuit without full disclosure to Judge Gibbons, Bill, and Nora.

21.  Eric prepared the option to purchase, Exhibit 4, that was signed by the Neumanns. HT 74:7-10. The Neumanns did not record the option until two years later, after the complaint in this action had been filed in state court. Exhibit 16.

22.  The Neumanns' lease with Eric for the Grass Valley property required the Neumanns to pay the senior mortgage holder approximately $1,500 a month. The Neumanns paid nothing to the trust, the actual owner of the property.  HT 370:18-371:8.

23.  When the mortgage servicer gave notice that it was going to foreclose on the property, the Neumanns stopped making payments. Eric allowed the Neumanns to continue to live on the property for the last three years without paying any rent whatsoever. HT 373:4-7.

**IV.    Karlon Kidder and Eric Dietlein's Relationship**

24.  Mr. Kidder and Eric met when Mr. Kidder became a "contract employee" of the Law Offices of Paul Freitag in April 2011. Eric was already working for Mr. Freitag. In November 2011, Mr. Kidder opened up his own law office and Eric went with him. HT 13:14-14:5.

25.   Mr. Kidder and Eric signed an "Employment Agreement with Independent Contractor."  Eric Dietlein signed on behalf a limited liability company, EC Real Solutions. Exhibit 31. The purpose of the employment agreement with EC Real Solutions, instead of Eric Dietlein personally, was so that Eric could deduct certain expenses. HT 6:23-7:6.

26.  Mr. Kidder had direct supervisory authority over the work Eric performed on Mr. Kidder's behalf. HT 53:15-19.  Mr. Kidder testified that Eric took orders from him and that Eric worked for him. HT 240:20-25.

27.   Eric generally worked for Mr. Kidder from 10:00 A.M. to 6:00 P.M. every day as well as some weekends. HT 8:23-9:3.

28.   Mr. Kidder paid Eric a salary of $7,000 a month, regardless of hours actually worked. HT 9:21-10:2.

29.  Mr. Kidder did not provide health insurance or pension benefits to Eric.  Mr. Kidder did provide Eric with disability insurance at some point. HT 10:8-13.

30.  When Eric was sick, his salary was not reduced. HT 70:2-3.

31.  Eric had no ability to realize a profit or loss from his business relationship with Mr. Kidder. HT 11:9-16.

32.  Mr. Kidder did not withhold income tax or Social Security and Medicare taxes for Eric.  Mr. Kidder issued Eric a Form 1099. HT 11:17-25.

33.  The written contract was for Eric to provide "office management."  Exhibit 31; HT 6:15-22. Eric testified the only office management that he performed was ancillary to preparing operating reports, "motions to value" and performing case analysis. HT 67:13-22.

34.  Mr. Kidder and Eric gave differing accounts of Eric's job duties.  According to Mr. Kidder, Eric's job duties included scheduling, marketing, advertising, occasional consultations with clients, a small amount of drafting legal pleadings and communications with clients. HT 7:21-8:22. According to Eric, he was responsible for reviewing income information for people who had issues with mortgages, inputting data into mortgage modification and short sale software, working with another employee contacting mortgage companies, and paying bills. HT 60:11-22.

35.  Mr. Kidder previously represented to the court on February 24, 2014 that Eric was a paralegal. Exhibit 57; HT 20:10-12. Mr. Kidder changed his story and denied that Eric was a paralegal during the show cause hearing. HT 15:2-12.  Eric also denied being a "real paralegal" because he did not receive schooling or training and did not hold himself out as a paralegal.  HT 182:15-183:15.

36.  Eric prepared "motions to value" for bankruptcy cases. HT 60:23-61:9.  Eric was involved in 75-100 wrongful foreclosure, loan modification and Chapter 11 cases.  HT 81:23-82:5.

37.  Eric met with Derek and Gina Neumann at his office without Mr. Kidder present. HT 85:12-13.

38.  Mr. Kidder testified his business relationship with Eric ended in March 2014. HT 6:7-12.

**V.     Lack of Property Authority for this Lawsuit**

39.  Mr. Kidder admitted it was improper to file suit naming only a trust, rather than a trustee, as the plaintiff. HT 17:1-15.

40.  The trustee at the time the complaint in this action was filed, Mark Chase, is never named in the complaint.  Mr. Kidder had no explanation of why Mr. Chase was never mentioned or identified in the complaint. HT 18:12-19:13; 235:12-15.

41.  Mr. Kidder was aware that Eric had resigned as a trustee when he filed the complaint in this action. Exhibit 52; HT 235:5-7.

42.  Mr. Kidder attached two letters to the complaint as exhibits.  Those letters identify Eric as trustee.  No other trustee is identified in the caption or body of the complaint.  The intention was for the reader to conclude that Eric, identified as a trustee in the exhibits, was the trustee at the time the complaint was filed. HT 235:19-237:14.

43.  Eric personally paid for the filing fees for this case. HT 24:8-11.

44.  Despite the fact that Eric was not a trustee and reported that the property had zero value (Exhibit 28), Mr. Kidder testified that Eric was very interested in the outcome of this litigation. HT 39:4-6.

45.  Mr. Kidder's claim that he talked to Mr. Brooke, the trustee's attorney, prior to filing the complaint is not credible.  Exhibit 41; 237:15-238:16. There was no credible evidence that Mr. Kidder ever received authorization to file this lawsuit.

46.  Mr. Brooke previously represented Eric while Eric was a trustee. HT 284:1-21. Mr. Brooke was not familiar with these proceedings. HT 264:5-7. Mr. Brooke did not recall ever speaking to Mr. Kidder. HT 266:11-19.

47.  Mr. Brooke did not recall any discussion with Eric in which he told Eric he had authority to proceed with this lawsuit.  Mr. Brooke does not deny that such a conversation may have taken place only because Eric acted as if it had. HT 279:18-23; 280:7-15.

48.  The trustee of the trust, Mr. Chase, who served in that role from April 2011 to October 2013, was subpoenaed by Mr. Kidder and/or Eric and was present outside the courtroom. Mr. Kidder and Eric had the opportunity to examine Mr. Chase, but they both declined to do so. There is no credible evidence that Mr. Kidder ever communicated with Mr. Chase.

49.  Mr. Brooke did not have an opportunity to perform any independent investigation. He relied solely on information and documents that Eric provided. HT 295:17-296:2.

50.  Based on the information Eric provided, Mr. Brooke was incorrectly led to believe that all trust assets were held in LLCs managed by Eric.  HT 298:6-20.

51.   Various status reports, declarations and other pleadings from the Ninth Judicial District Court were introduced into evidence.  *See e.g.*, Exhibits 44-50.  Eric took the position that he informed Judge Gibbons about this Grass Valley property through references to a "Palomino Property."  Eric testified the "Palomino Property" referred to or included the Grass Valley property which is the subject of this action. HT 149:3-13.

52.   Documents in evidence describe the "Palomino Property" as an undeveloped forty-two-acre parcel with an APN number ending in 03. The property at issue in this action is an improved property with an APN number ending in 09. HT 148:13-155:9.  The evidence does not support Eric's position that references to the "Palomino Property" refer to the developed property at issue in this case.  The "Palomino Property" was a separate, undeveloped property.

53.   On December 12, 2011, Mark Wray, Esq., Eric's attorney in the proceedings before Judge Gibbons, sent an email to Mr. Brooke informing him that Eric filed a lawsuit "at his expense" regarding the Grass Valley property.   Mr. Brooke responded asking for further information and stating: "I was not aware of this additional Palomino Property." Exhibit 41; 155:10-157:20.

54.   Emails produced by Mr. Kidder show that approval to pursue this lawsuit was never obtained from Judge Gibbons.  Eric and his attorney, Mark Wray, Esq, were aware there was a lack of authority for Mr. Kidder to proceed with this action.  Eric and Mr. Wray discussed including reference to this lawsuit in a proposed stipulated order for Judge Gibbons to sign, but no reference to this lawsuit was included in the order.  Exhibits 44 and 48; 151:8-155:9.

55.   In Exhibit 44, a December 16, 2011 email, Mr. Wray stated to Eric:

> The order does not list the AHMSI lawsuit. I am on the fence about whether it should be included in this order. We raised the subject of the lawsuit at the hearing, but did not necessarily ask the court for approval to pursue it. So I don't know if it should be included as being approved or not mentioned in the order at all.

This lawsuit was not mentioned in Mr. Wray's proposed order which Judge Gibbons adopted.

56.  Mr. Wray did not ask Judge Gibbons to give approval of Eric's actions regarding this lawsuit at the December 2011 status hearing in Judge Gibbons's court. HT 343:13-18.

57.  When Mr. Wray mentioned the AHMSI lawsuit at the September 24, 2012 status hearing in Judge Gibbons's court, the Judge questioned whether he had given Eric approval to engage in those activities. Mr. Wray represented to Judge Gibbons that Eric had authority as manager of an LLC.  Exhibit 54 page 25-26; HT 164:9-165:10.

58.  While Eric was manager of several limited liability companies that were owned by the trust, the Grass Valley property at issue in this action was never owned by a limited liability company. HT 157:21-160:18.

59.  Eric was sitting next to Mr. Wray at the September 24, 2012 status hearing, and Eric did not correct Mr. Wray's misstatements to Judge Gibbons. HT 164:4-6. Eric was aware that approximately five days prior to the September 24, 2012 status hearing, he had been sued by his brother and sister for mishandling trust property. HT 163:10-23.  Mr. Wray never corrected his misrepresentations to Judge Gibbons. HT 166:18-21.

60.  At the September 24, 2012 status conference, Mr. Wray also represented to Judge Gibbons that Eric had a fiduciary duty regarding the Grass Valley property that was owed to all three beneficiaries – Bill, Nora and Eric Dietlein. HT 167:1-13. Exhibit 54.

61.  Judge Gibbons ordered Mr. Wray to file a status report that included an update on this lawsuit and any settlement negotiations. Mr. Wray responded "Okay. We'll put all the negotiations in there." HT 167:18-23.

62.  Eric Dietlein and Mr. Wray never reported to Judge Gibbons about the negotiations regarding the Grass Valley property or this lawsuit. HT 168:16-19; 172:5-11.

63.  On October 12, 2012, Judge Gibbons issued an "Order Following 24 September 2012 Status Conference." The order required Eric to submit an accounting of all activities he undertook as manager of the trust-owned limited liability companies, sworn to under penalty of perjury, within ten days.  Eric did not comply with that order. Exhibit 55; HT 169:3-171:2.

64. In July 2013, Judge Gibbons ordered Eric to give Bill and Nora access to "ALL trust documents in his possession." Exhibit 50, page 7 lines 4-6. Eric did not give Bill, Nora or their counsel access to documents related to the Grass Valley property or this action.  Bill never saw a single pleading from this case. HT 226:9-12.

## VI.    The Nature of Mr. Kidder's Representation of the Plaintiffs

65.  Mr. Kidder claimed to be working on this case pro bono.  Mr. Kidder kept time records on other pro bono cases but did not keep time records for this case.  Eric did not keep time records on this case.  Despite claiming this case was pro bono, Mr. Kidder expected to be paid for his work based on a percentage of any future settlement. HT 20:17-23:6.

66.  Mr. Neumann understood that Mr. Kidder would take his legal fees out of any future settlement.  Mr. Kidder had no written fee agreement with the Neumanns, contingency or otherwise. HT 106:11-20.

67.  Eric told his attorney, Mark Wray, Esq., that he would be seeking legal fees in this action.  The intended recipients of those fees were Paul Freitag and Mr. Kidder. Exhibit 43; HT 160:20-161:17.

68.  Mr. Kidder had no retainer agreement with anyone representing the trust, including the trustee.  Mr. Kidder has no writing of any kind authorizing him to act as counsel for the trust in this case. HT 23:14-18; 26:3-7.

69.  Mr. Kidder had the Neumanns sign a conflict waiver on November 18, 2011, after the Complaint had already been filed.  Exhibit 18.  Mr. Kidder did not obtain any conflict waiver from the trust or anyone representing the trust.

70.  Mr. Kidder testified that he was not involved with any other dealings relating to the trust. HT 33:25-34:5.  Mr. Kidder's testimony is contradicted by Exhibit 30.  Exhibit 30 states that Mr. Kidder was the settlement agent for the sale of a trust-owned limited liability company, Phoenix Inn, LLC.

71.  At the January 2013 settlement conference in this action, Mr. Kidder and Eric did not disclose to the court the nature of Eric's purported authority to settle the case and that he was not a trustee.  Eric held himself out as the person with authority to settle the case. HT 87:2-5. Mr. Kidder did not disclose to the court that the trustee was Mark Chase. HT 34:21-37:23. The defendants in this case were never informed that Mark Chase was the trustee. HT 175:3-9.

72.  Mr. Neumann spoke to Mr. Kidder no more than six times. HT 104:19-21. If Mr. Kidder wanted to communicate with the Neumanns, he did so through Eric.  HT 41:24-25.

**VII.    Motion to Enforce Settlement Agreement**

73.  At the January 27, 2014 status conference, the court stayed the filing of any motions to enforce the settlement agreement reached at the January 2013 settlement conference. Nevertheless, the Neumanns filed a motion to enforce *pro se* (#42).

74.  Eric, not the Neumanns, prepared the motion to enforce.  HT 90-16:18; 112:10-13. Mr. Neumann did not write any part of the motion. HT 91:3-9.

75.  Eric is familiar with online legal research tools and has visited the law library.  HT 95:4-97:6.  Eric performed legal research to prepare the motion to enforce.

76.  Mr. Kidder was still counsel for the Neumanns when they filed the *pro se* motion to enforce. HT 41-6:9.

77.  Mr. Kidder testified he had no knowledge of the motion to enforce prior to it being filed.  HT 43:19-44:4.  Mr. Kidder's testimony is not credible.  Mr. Kidder was informed by email at least once prior to the filing of the motion to enforce that Eric was preparing the motion. Exhibit 42.

78.  Exhibit 42 is an email from Eric to Mr. Kidder dated the day before the motion to enforce was filed.  It states:

> Below- that email from Scott Brooke that will replace our affidavits for the Motion to Enforce that Derek will be filing. I thought I sent you this – but just in case… can't have enough copies of this floating around eh?

79.  Mr. Kidder knew the motion to enforce was improper under the Local Rules and that it violated the court's express order.  Nevertheless, after the motion was filed, the only action Mr. Kidder took was to ask Eric to call the Neumanns.  Mr. Kidder had no explanation for why he did not contact his clients himself.  HT 45:20-25.

80.  Mr. Neumann was not advised by anyone to withdraw the motion to enforce.  He did not even know withdrawing a motion was possible.  HT 113:20-25.

81.  Mr. Kidder was on notice by the date of Exhibit 24, February 10, 2014, or soon thereafter, that he would be subject to sanctions under Local Rules and/or 28 U.S.C. § 1927 if he

did not takes steps to withdraw the motion to enforce.  Mr. Kidder failed to make any attempt to withdraw the motion. HT 365:4-25.

82.  Mr. Kidder did not tell the Neumanns to withdraw the motion to enforce because he wanted the court to see what was in the motion. HT 367:12-368:14.

83. Mr. Kidder then filed an omnibus response (#52) to several pending motions.  Eight out of the twelve pages in the Mr. Kidder's response were copied verbatim from the motion to enforce written by Eric.  HT 50:22-51:2.

84.  The court ordered Mr. Neumann to file a sworn statement explaining who wrote the motion to enforce.  Mr. Neumann did so.  Mr. Neumann's affidavit states, in pertinent part:

> In supporting my investigation, I requested the help of Eric Dietlein.  Mr. Dietlein was kind enough to open up family proceedings and provide any related documents to support my investigation. Therefore, this said Motion was compiled together with the assistance of Eric Dietlein and me, Derek E. Neumann.

Exhibit 20.

85.  Mr. Neumann's affidavit does not comport with his own testimony or Eric's testimony that Eric wrote the motion to enforce and then gave it to the Neumanns to file.  Mr. Neumann refused to admit he filed a false or misleading affidavit. HT 388:6-389:18.

**VIII.   <u>Mr. Kidder's Fraudulent Document Production</u>**

86.  On January 27, 2014, the Court ordered as follows:

> Mr. Kidder who purports to represent the trust in this litigation is ordered to provide to Mr. Wilson and Mr. Herman his complete client file including all notes, correspondence, emails, pleadings, any paper whatsoever that deals with his representation of this trust by no later than close of business on Friday, January 31, 2014. (#40).

87.  In response to that order, Mr. Kidder produced telephone records that were not his own and were not in his possession. HT 242:6-243:20.

88.  The telephone records produced by Mr. Kidder were heavily redacted.  Mr. Kidder's explanation for the redactions was that he only wanted to produce records that were relevant to his representation of the trust. HT 243:21-244:2.

89.   The co-trustees filed a motion to compel (#45).  That motion describes how Mr. Kidder failed to comply with the court's January 27, 2014 order.  The motion also requested, *inter alia*, unredacted copies of the telephone records.

90.   Mr. Kidder produced approximately 500 additional pages after hearing on the co-trustees' motion to compel.  HT 353:11-13.

91.   Among the items Mr. Kidder produced after the motion to compel was a Broker Price Opinion, Exhibit 14.  The co-trustees obtained a copy of the original Broker Price Opinion from its author, J.D. Drakulich, which was delivered to Eric as a word document. The original document had a date.  The date was deleted from the copy produced to the co-trustees in an attempt to mislead them about when the work was performed. Exhibit 64; HT 353:14-358:21.

92.   Exhibit 32 contains both redacted and unredacted versions of the telephone records produced by Mr. Kidder.  HT 244:7-18.

93.   Mr. Kidder's intent in producing the telephone records was to show that he was in contact with Mr. Brooke and Mr. Chase. HT 245:5-8.  The telephone records do not reflect Mr. Kidder's calls.

94.   Mr. Kidder and Eric intentionally altered the phone records to conceal that the telephone records were for (1) the Phoenix Inn, LLC, a limited liability company that was managed exclusively by Eric and (2) Eric's mobile telephone.  Phoenix Inn, LLC owned the Atomic Inn in Beatty, Nevada.  Mr. Kidder's testimony that he did not intend to deceive the co-trustees was not credible.  HT 245:9-259:5.  The calls that were redacted were not client calls, but Eric's calls to the Atomic Inn.

95.   Mr. Kidder put Eric in charge of making his court-ordered production after the co-trustees had made allegations of misconduct by Eric in these proceedings.  Mr. Kidder did not review Eric's work in preparing the document production.  HT 257:21-258:5.

## CONCLUSIONS OF LAW

1.   Courts have inherent power to sanction attorneys practicing before them. *Roadway Express, Inc. v. Piper,* 447 U.S. 752 (1980).  An attorney's conduct must be in bad faith, or "tantamount" to bad faith. *Fink v. Gomez,* 239 F.3d 989, 991 (9th Cir. 2001).  Attorney's

fees under a court's inherent power may be assessed against a broad range of improper behavior, including "willful disobedience of a court order . . . or when a losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons," as well as for "willful abuse of the judicial process." *Id.* (citing *Roadway Express,* 447 U.S. at 766).   An explicit finding of bad faith or willful misconduct is required before a court may impose sanctions pursuant to its inherent power.   *In re Dyer,* 322 F.3d 1178, 1196 (9th Cir. 2003).   Inherent sanctions may be imposed against attorneys, clients and *pro se* litigants.   *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y,* 421 U.S.240, 258-59 (1975) (holding that sanctions are appropriate against any party acting in bad faith, wantonly, or vexatiously).   *Aloe Vera of America, Inc. v. U.S.*, 376 F.3d 960, 965 (9th Cir. 2004) (sanctions are an appropriate response when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons); *Leon v. IDX Systems Corp.*, 464 F.3d 951, 961 (9th Cir. 2006) (it is within a district court's inherent power to award sanctions in the form of attorneys' fees against a party or counsel who acts in bad faith, vexatiously, wantonly, or for oppressive reasons).

2.      Title 28 U.S.C. § 1927 provides that, "[A]ny attorney or other person admitted to conduct cases in any court of the United States or any Territory thereof who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct."   To warrant sanctions pursuant to Section 1927, a court must find the attorney acted with recklessness or subjective bad faith.   *B.K.B. v. Maui Police Department*, 276 F.3d 1091, 1107 (9th Cir. 2002).   Section 1927 does not apply to initial pleadings, since it addresses only the multiplication of proceedings."   *In re Keegan Management Co., Securities Litigation,* 78 F.3d 431, 435 (9th Cir. 1996)**.**   "Bad faith is present when an attorney knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purposes of harassing an opponent." *Fink,* 276 F.3d at 993-94 (citing *Keegan,* 78 F.3d at 436).

3.      Local Rule of Practice ("LR") 1A 4-1 provides:

> The Court may, after notice and opportunity to be heard, impose any and all appropriate sanctions on an attorney or party appearing in *pro se* who, without just cause:

- 17 -

   (a) Fails to appear when required for pretrial conference, argument on motion, or trial;

   (b) Fails to prepare for a presentation to the Court;

   (c) Fails to comply with these Rules; or,

   (d) Fails to comply with any order of this Court.

4. LR IA 10-6(a) concerns attorney appearances and states:

   (a) A party who has appeared by attorney cannot while so represented appear or act in the case.  An attorney who has appeared for a party shall be recognized by the Court and all the parties as having control of the client's case.  The Court in its discretion may hear a party in open Court even though the party is represented by an attorney.

5. LR 1A 10-7(a) incorporates the Nevada Rules of Professional Conduct and states, in pertinent part:

"Any attorney who violates these standards of conduct may be disbarred, suspended from practice before this Court for a definitive time, reprimanded or subjected to such other discipline the Court deems proper.  This subsection does not restrict the Court's contempt power."

A. Rule 1.5(c) of the Nevada Rules of Professional Conduct ("Nev.R.Prof.C.") provides that a contingent fee agreement "shall be in writing signed by the client, . . ."

B. Nev.R.Prof.C. 3.3(a) governs candor toward the tribunal and states:

(a) A lawyer shall not knowingly:

(1)  Make a false statement of fact or law to a tribunal or fail to correct a false statement of material fact or law previously made to the tribunal by the lawyer;

(2) Fail to disclose to the tribunal legal authority in the controlling jurisdiction known to the lawyer to be directly adverse to the position of the client and not disclosed by opposing counsel; or

(3)  Offer evidence that the lawyer knows to be false.  If a lawyer, the lawyer's client, or a witness called by the lawyer has offered

material evidence and the lawyer comes to know of its falsity, the lawyer shall take reasonable remedial measures, including, if necessary, disclosure to the tribunal.  A lawyer may refuse to offer evidence, other than the testimony of a defendant in a criminal matter, that the lawyer reasonably believes is false.

C.     Nev.R.Prof.C. 3.4(a) and (b) concern fairness to the opposing party and counsel and state:

A lawyer shall not:

(a)   Unlawfully obstruct another party's access to evidence or unlawfully alter, destroy or conceal a document or other material having potential evidentiary value.  A lawyer shall not counsel or assist another person to do any such act.

(b)  Falsify evidence, counsel or assist a witness to testify falsely, or offer an inducement to a witness that is prohibited by law.

D.     Nev.R.Prof.C. 5.3(a), (b) and (c) concern a lawyer's responsibility to nonlawyer assistant and provide:

With respect to a nonlawyer employed or retained by or associated with a lawyer:

(a)   A partner, and a lawyer who individually or together with other lawyers possesses comparable managerial authority in a law firm, shall make reasonable efforts to ensure that the firm has in effect measures giving reasonable assurance that the person's conduct is compatible with the professional obligations of the lawyer;

(b)    A lawyer having direct supervisory authority over the nonlawyer shall make reasonable efforts to ensure that the person's conduct is compatible with the professional obligations of the lawyer; and

(c) A lawyer shall be responsible for conduct of such a person that would be a violation of the Rules of Professional Conduct if engaged in by a lawyer if:

(1)   The lawyer orders or, with the knowledge of the specific conduct, ratifies the conduct involved; or

(2)  The lawyer is a partner or has comparable managerial authority in the law firm in which the person is employed, or has

direct supervisory authority over the person, and knows of the conduct at a time when its consequences can be avoided or mitigated but fails to take reasonable remedial action.

E.      Nev.R.Prof.C. 5.5(a)(2) provides that "[a] lawyer shall not assist another person in the unauthorized practice of law."

F.      Nev.R.Prof.C. 8.4(a), (c) and (d) govern professional misconduct and provide:

It is professional misconduct for a lawyer to:

(a)   Violate or attempt to violate the Rules of Professional Conduct, knowingly assist or induce another to do so, or do so through the acts of another;

* * *

(c)   Engage in conduct involving dishonesty, fraud, deceit or misrepresentation;

(d)  Engage in conduct that is prejudicial to the administration of justice.

6.      N.R.S. § 7.285(1) and (3) governs the unauthorized practice of law and states:

1.      A person shall not practice law in this state if the person:

(a)   Is not an active member of the State Bar of Nevada or otherwise authorized to practice law in this state pursuant to the rules of the supreme court; or

(b)  Is suspended or has been disbarred from membership in the State Bar of Nevada pursuant to the rules of the supreme court.

* * *

3.  The State Bar of Nevada may bring a civil action to secure an injunction and any other appropriate relief against a person who violates this section.

7.      "A party to litigation is either a natural or an artificial person. ... It is the trustee, or the trustees, rather than the trust itself that is entitled to bring suit." *Causey v. Carpenters S. Nevada Vacation Trust,* 95 Nev. 609, 610, 600 P.2d 244, 245 (1979).

8.      It was improper for Mr. Kidder to file the complaint in this action in the name of the Eleanora J. Dietlein Trust, rather than in the name of a trustee representing the trust.  *Causey v. Carpenters S. Nevada Vacation Trust,* 95 Nev. 609, 610, 600 P.2d 244, 245 (1979) ("A party to litigation is either a natural or an artificial person.  'Trust Funds' is neither.  It is the trustee, or trustees, rather than trust itself that is entitled to bring suit.").  Mr. Kidder violated Nev.R.Prof.C 3.3(a) and Nev.R.Prof.C. 8.4(a), (c), and (d).

9.      Eric was Mr. Kidder's employee.  Eric was not an independent contractor.  Mr. Kidder had direct control over Eric's work performance and could assign him to perform specific tasks.   The nature of Eric's work and the manner in which Eric was paid evidence an employment relationship.

10.     Mr. Kidder is responsible for any violations of the Nevada Rules of Professional Conduct that he knew Eric was going to commit or which Mr. Kidder later ratified.  Nev.R.Prof.C. 5.3.

11.     Eric ghostwrote the motion to enforce (#42) in violation of Local Rule IA 10-6(a) and the court's January 27, 2014 order.

12.     Eric engaged in the unlawful practice of law in violation of N.R.S. § 7.285.

13.     Mr. Kidder knew Eric was going to file the motion to enforce and did not take action to prevent a violation of the court's January 27, 2014 order.  Mr. Kidder's conduct violated LR IA 4-1, Nev.R.Prof.C. 3.3(a)(1), Nev.R.Prof.C. 5.3(a), (b) and (c), and Nev.R.Prof.C. 5.5(a)(2), Nev.R.Prof.C. 8.4(a), (c) and (d).  Mr. Kidder acted in bad faith and engaged in willful misconduct; therefore, sanctions are warranted pursuant to the court's inherent power and 28 U.S.C. § 1927, and LR IA 4-1.

14.     Mr. Kidder failed to instruct Eric or the Neumanns to withdraw the motion.  Instead, Mr. Kidder further ratified Eric's conduct by republishing the contents of that motion in his omnibus response (#52).  Mr. Kidder violated LR IA 4-1(d), Nev.R.Prof.C. 5.3(a), (b) and (c), Nev.R.Prof.C. 5.5(a)(2), and Nev.R.Prof.C 8.4(a), (c) and (d).  Mr. Kidder acted in bad faith and engaged in willful misconduct; therefore, sanctions are warranted pursuant to the court's inherent authority, 28 U.S.C. § 1927, and LR IA 4-1.

15.     Mr. Kidder violated Nev.R.Prof.C. 1.5(c), by failing to obtain a written contingency fee agreement for a case in which the parties understood that Mr. Kidder and Mr. Freitag would be paid fees out of a settlement.  Mr. Kidder's testimony that this case was pro bono is belied by testimony about his expected contingency fee.

16.     Mr. Kidder made false statements about his knowledge of Eric's activities and that Eric was a paralegal.  Mr. Kidder failed to disclose at the January 2013 settlement conference that Eric was not the trustee, and Mr. Kidder filed a complaint which identifies Eric as a trustee in his exhibits but does not reveal that Eric had resigned from that position.  Mr. Kidder violated Nev.R.Prof.C. 3.3(a), and acted in bad faith and engaged in willful misconduct; therefore, sanctions are warranted pursuant to the court's inherent authority, 28 U.S.C. § 1927, and LR IA 4-1.

17.     Mr. Kidder violated Nev.R.Prof.C. 3.4(a) by surreptitiously altering telephone records to make it appear that Eric's telephone calls were his own.  Mr. Kidder is also responsible for the alteration of the broker price opinion by his employee, Eric.  Mr. Kidder acted in bad faith and engaged in willful misconduct; therefore, sanctions are warranted pursuant to the court's inherent authority and 28 U.S.C. § 1927.

18.     Mr. Kidder committed the above-described acts, including but not limited to, filing the complaint in this action without obtaining proper authority or consent; making misrepresentations to the court at status hearings and motion hearings; failing to disclose the identity of the trustee; failing to inform the court that Eric was no longer the trustee; surreptitiously altering evidence and allowing his employee to surreptitiously alter evidence; allowing his employee and clients to violate court orders and local rules; failing to take appropriate action to remedy a violation of court orders and local rules; and failing to supervise his employee, Eric, or to review all of his work.  Mr. Kidder's conduct violated Nev.R.Prof.C. 3.3(a), 3.4(a) and (b), 5.3(a), (b) and (c), 5.5(a)(2), and 8.4(a), (c) and (d).  Mr. Kidder acted in bad faith and engaged in willful misconduct; therefore, sanctions are warranted pursuant to the court's inherent power, 28 U.S.C. § 1927, and LR IA 4-1.

19.     Mr. Kidder and Eric engaged in the above-described willful misconduct with bad faith and intent to defraud.  Sanctions are warranted against Mr. Kidder pursuant to the court's inherent power, 28 U.S.C. § 1927, and LR IA 4-1.  Sanctions are warranted against Eric pursuant to the court's inherent power.

20.     Mr. Kidder has unreasonably multiplied these proceedings by allowing his employee to ghostwrite the motion to enforce which was then filed in violation of the court's January 27, 2013 order.  Mr. Kidder was asked by defense counsel, Christina Bhirud, Esq., to take steps to withdraw the motion as Mr. Kidder was still counsel of record.  Mr. Kidder failed to take any reasonable steps to withdraw the motion, necessitating briefs from both the defendants and the co-trustees.  Mr. Kidder also filed an omnibus response republishing the motion to enforce which also required responses.  As a direct result, multiple days of hearings were required at great expense to the parties.  Mr. Kidder acted in bad faith and engaged in willful misconduct; therefore, sanctions against Mr. Kidder are warranted pursuant to the court's inherent power, 28 U.S.C. § 1927, and LR IA 4-1.

<u>**ORDER**</u>

In accordance with the findings of fact and conclusions of law, the court orders as follows:

**I.     Mr. Kidder**

1.     The motion of Bill and Nora for sanctions (#45) is **GRANTED**.

2.     Mr. Kidder is jointly and severally liable for the attorney's fees and costs of Bill and Nora incurred in this case for the period from January 27, 2014 to June 23, 2014.  The co-trustees, Bill and Nora, shall file declarations setting out their fees and costs within thirty days of the date of this order pursuant to LR 54-16(b) and (c).  Mr. Kidder may file an opposition pursuant to LR 54-16(e).

3.     This order is referred to the State Bar of Nevada for further disciplinary proceedings.  The Clerk of Court shall **SEND** a copy of this order to the State Bar of Nevada, Office of Bar Counsel, 600 East Charleston Blvd., Las Vegas, Nevada 89104.

4.      The Clerk of Court shall **SEND** a copy of this order to the Honorable Michael P. Gibbons, District Judge, Department Two, Ninth Judicial District, 1038 Buckeye, P.O. Box 218, Minden, Nevada  89423.

## II.      <u>Eric Dietlein</u>

1.      Eric Dietlein is jointly and severally liable for the attorney's fees and costs of Bill and Nora incurred in this case for the period from January 27, 2014 to June 23, 2014.  The co-trustees, Bill and Nora shall file declarations setting out their fees and costs within thirty days of the date of this order pursuant to LR 54-16(b) and (c).  Eric may file an opposition pursuant to LR 54-16(e).

2.      Eric is referred to the State Bar of Nevada for further proceedings pursuant to N.R.S. § 7.285.  The Clerk of Court shall **SEND** a copy of this order to the State Bar of Nevada, Office of Bar Counsel, 600 East Charleston Blvd., Las Vegas, Nevada  89104.

4.      The Clerk of Court shall **SEND** a copy of this order to the Honorable Michael P. Gibbons, District Judge, Department Two, Ninth Judicial District, 1038 Buckeye, P.O. Box 218, Minden, Nevada  89423.

IT IS FURTHER ORDERED:

1.      Within thirty days of the date of this order, the current co-trustees, Bill, Nora, and Eric shall file a substitution of counsel for the trust and they shall also file a substitution of parties naming all three current trustees.

2.      Within thirty days of the date of this order, the Neumanns shall also either confirm that Kevin Alvis Van Ry, Esq. will remain their counsel throughout the remainder of this proceeding, file a substitution of counsel, or substitute themselves to act *in propria persona*.

3.      Pursuant to LR IB 3-1(a), a party may file with the District Court an objection to this within fourteen days of service of the order.  Therefore, this order is **STAYED** until **Thursday, August 14, 2014**.  If objections are filed, this stay shall remain in effect until the District Court issues its final order.  If no

objections are filed, the effective date of this order shall be **Friday, August 15, 2014.**

**IT IS SO ORDERED.**

Dated:  July 31, 2014.

_____

UNITED STATES MAGISTRATE JUDGE